Alejandro Maynez (UT #7083)
1676 N 400 E
Orem, Utah 84097
Telephone:(801)764-9585
Facsimile: (801)607-6982
maynez_law@comcast.net

*Attorney for Plaintiff*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| IN RE:<br><br>GUILLERMINA SALAZAR<br><br>   DEBTOR, | Bankruptcy No.: 16-29028 KRA |
| EDUARDO VALADEZ,<br><br>Plaintiff,<br><br>vs.<br><br>GUILLERMINA SALAZAR<br><br>Defendant | CHAPTER 7<br><br>ADVERSARY PROCEEDING NUMBER:<br><br>_____ |

COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT

Plaintiff Eduardo Valadez seeks a determination of nondischargeability pursuant to 11 U.S.C. §523(a)(6) and for cause of action complains and alleges against Debtor/Defendant Guillermina Salazar as follows:

## PARTIES

1. Defendant Guillermina Salazar ("Salazar), is an individual residing in Utah County, State of Utah. She is the Debtor in the above-captioned bankruptcy case.

2. Plaintiff Eduardo Valadez ("Eduardo") is an individual residing in Utah County, State of Utah.

## JURISDISCTION AND VENUE

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.§§ 157(a) and 1334(b).

4. This matter is a core proceeding pursuant to 28 U.S.C.§157(b)(2)(I) in that it seeks a determination of dischargeability of particular debts pursuant to 11 U.S.C. § 523(a)(6) and DUCivR 83-7.1.

5. Venue of this adversary proceeding is proper in this Bankruptcy Court Pursuant to 28 U.S.C. §§ 1408(1) and 1409.

6. This adversary proceeding arises in and under and relates to the bankruptcy case styled *In re Guillermina Salazar*, a chapter 7 case pending before the United States Bankruptcy Court for the District of Utah, Northern Division, docketed as case number 2:16-bk-29028 KRA.

## GENERAL ALLEGATIONS

7. In 2014 Eduardo received a sizeable personal injury settlement.

8. Through mutual acquaintances defendant Salazar found out about Eduardo's personal injury settlement.

9. On or about November 2014 Salazar approached Eduardo at a family gathering and importuned him for a loan. Salazar convinced Eduardo to trust her and that Salazar promised she would pay him back in full. To further gain Eduardo's trust Salazar informed Eduardo that she owned a mobile home which was unencumbered.

10. At the family gathering, with several family and friends present, Eduardo brought out the $14,000.00 Salazar had requested. In the presence of family and friends the cash was handed personally to Salazar. Eduardo and Salazar agreed and consented that Salazar would only need four months to repay Eduardo.

11. On or about December 2014 it became apparent to Eduardo that Salazar would be unable to make good on her promise to repay the $14,000.00 loan. Salazar had not made a payment to Eduardo.

12. Eduardo and Salazar met again and then further agreed in good faith that Salazar would use her mobile home as collateral for the $14,000 loan and that a modest interest would be charged.

13. Eduardo and Salazar agreed that interest would be charged on the $14,000 but the actual amount of interest was not agreed upon. The parties had several discussions regarding what might be a fair interest amount. Salazar rejected the proposal that Eduardo would charge what a quick loan establishment or a regular bank would charge.

14. Salazar knew that she had to repay the $14,000.00 along with a reasonable interest.

15. On or about December 15, 2014 Eduardo and Salazar agreed to memorialize the loaning of the $14,000 to Salazar by Eduardo via two written instruments. Eduardo and Salazar signed an agreement which stated that on "October 21, 2014 as collateral for the $14,000

already received was a mobile home which would allow Plaintiff to take possession in the event that Defendant did not repay as agreed." The second executed document was an original Utah Certificate of Title #UT91XXXXX for Salazar's 1974 Stax VIN/HIN #S10XXX manufactured house. Salazar signed as the "Seller" and Eduardo signed as the "Buyer." This original, fully executed document was handed to Eduardo by Salazar to keep in his possession. This original, fully executed title was dated 10/21/2014 and which indicated a "sales price" of $14,000.00. An additional amount, consisting of $1,000, was loaned to Salazar's daughter on this occasion where a title for a 1992 Toyota Camry was exchanged.

16. As of the date of the filing of this complaint in the instant adversary proceeding, Salazar has failed to make any payments toward this obligation.

17. Eduardo had repeatedly made demands to Salazar to make the agreed payments and pay him back in full.

18. As Eduardo and Salazar, had agreed, expected and contemplated, Eduardo presented to the State of Utah Motor Vehicles Department (DMV) and attempted to file the fully executed original title to perfect his interest in the collateral.

19. The DMV informed Eduardo that Salazar had applied for a duplicate title and had since transferred ownership of the collateral home to an unknown third party.

20. Salazar's application to the DMV was patently false and fraudulent since Salazar knew that Eduardo had in his possession the original fully executed title to Salazar's mobile home.

21. Eduardo's communications and efforts to effectuate, at least minimum, payments were met by threats, false accusations and continual evasiveness. Salazar called the police and maliciously utilizing the courts to dissuade Eduardo from recovering the monies loaned to her.

22. In an effort to deter, discourage and otherwise harass Eduardo, Salazar, on September 3, 2015 filed a police report (Provo Police Report Incident # 15PR22934) in which Salazar swore under oath that Salazar . . . "had cancer, and they needed money really badly, so they took a loan from a "loan shark."" Salazar further alleged that Eduardo told her he could get a gun and others to intimidate and threaten Salazar. Salazar swore to the police that she was "worried about the fact that he might try to take their home because they had signed the title over to him when they took the loan." The Provo police department fully investigated Salazar's allegations. But, neither the Provo Police department, or any other entity, filed criminal charges against Eduardo.

23. To further frighten and prevent Eduardo from attempting to negotiate a payment plan, on October 1, 2015 Salazar requested a Civil Stalking Injunction through the Provo Fourth District Court, Case#150401538, against Eduardo. Salazar filed for a Stalking order the day after Eduardo had presented to her home, where he was accompanied by Eduardo's daughter, and in the presence of Salazar's spouse to attempt to reach yet another re-payment agreement.

24. In the Stalking Injunction Salazar, under sworn testimony, alleged, inter alia, that she "feared for her safety" claiming that Eduardo had "become very angry and was raising his hands and started yelling," that Eduardo "threatened her with bodily harm through

phone texts." Salazar claimed that she had "been making payments to Eduardo for over a year."

25. The Fourth District Court Judge's Findings reveal that a hearing was held where Defendant, Petitioner and Respondent/Defendant and his counsel were present. The Court received arguments and evidence and the Court dismissed the Civil Stalking Injunction. The court found that what Salazar described did not rise to the level of conduct that required a stalking order and Salazar was not in any imminent danger.

## FIRST CLAIM FOR RELIEF
## (11 U.S.C. § 523(a)(6))

26. Plaintiff re-alleges and incorporates the prior allegations of this Complaint as though fully restated herein.

27. The amount of the obligation owed to Eduardo by Salazar is nondischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(6) because the debt is based upon the willful and malicious injury by Salazar to Eduardo and/or to his property.

28. By virtue of the fully executed title between Salazar and Eduardo, Eduardo had a legal possessory interest in the chattel but which Salazar effectively dispossessed him of said interest.

29. Salazar's acts, that of obtaining a duplicate title under false pretenses and transferring ownership of the collateral were willful as Salazar knew and intended the injury to Eduardo's legal rights to the collateral.

30. Salazar maliciously injured Eduardo and/or his property without justification or excuse.

31. Salazar willfully utilized the police and the courts to harass Eduardo and prevent him from recovering the money loaned to Salazar.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant Guillermina Salazar as follows:

1. Upon his First Claim for Relief, for a nondischargeable judgment in favor of Plaintiff and against Defendant in the amount of $14,000.00, and together with accrued post-judgment interest thereon, pursuant to 11 U.S.C. § 523(a)(6).
2. Interest, costs, and attorney fees as may be allowed by law.
3. Such other and further relief as the Court deems just and equitable under the circumstances.

DATED this 17th day of January, 2017.

ALEJANDRO MAYNEZ, ATTORNEY AT LAW

    /s/ Alejandro Maynez
Alejandro Maynez
*Attorney for Plaintiffs*