Tessa M. Santiago, Bar No. 9324
Andrew T. Curtis, Bar No. 13681
LINCOLN LAW CENTER, LLC
921 W. Center Street
Orem, Utah 84057
Phone (801) 224-8282
Fax (800) 584-6826
tms@lincolnlaw.com
Attorney for Defendant

## IN THE U.S. BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In Re:<br><br>GUILLERMINA SALAZAR,<br><br>    Debtors | Case No. 16-29028 KRA<br><br>Chapter 7 |
| EDUARDO VALADEZ,<br><br>         Plaintiff<br><br>     v.<br><br>GUILLERMINA SALAZAR,<br><br>    Defendant | Adversary Proceeding No.  17-02005<br><br>Judge Kevin Anderson |

### OPPOSITION TO VERIFIED MOTION TO SET ASIDE ORDER OF DISMISSAL

Debtor-Defendant Guillermina Salazar, by and through counsel, Tessa Meyer Santiago of

LINCOLN LAW, files this Memorandum in Opposition to Plaintiff's Verified Motion to Set

Aside Order of Dismissal ("Motion").  Debtor requests the Court deny the Motion because the

actions of Plaintiff's counsel are not excusable under the excusable neglect standard.  Plaintiff's

counsel knew of and ignored the relevant deadlines; Plaintiff's personal crisis do not rise to the

level of excusable neglect recognized by the courts; Plaintiff's argument regarding the incapacity

caused by his illness are not made in good faith, and vacating the Order will cause significant

prejudice to the Debtor, who has complied in all respects with the Court's orders in this case.

## I.    BACKGROUND

On January 18, 2017, Plaintiff filed his Complaint seeking a determination of the

dischargeability of a debt.  Defendant timely filed her Answer to the Complaint on March 1,

2017. The next day, the Court entered its Scheduling Order, setting a March 24, 2017 deadline to

file the Parties Planning Meeting Report.  *See* ECF No. 5. The Court also set an April 3, 2017

deadline to exchange Initial Disclosures and set an Initial Pretrial Conference for April 4, 2017.

*See* ECF. No. 5.  Plaintiff's counsel calendared the deadlines. See Motion, p. 2 ¶2.

Plaintiff did not timely hold a parties planning meeting.  Neither did Plaintiff timely file a

Rule 35 Report.  A meeting was held and a report was filed, but only because Debtor's counsel

contacted Plaintiff's counsel the day before the Initial Pretrial Conference and reminded

Plaintiff's counsel of the deadlines. *See* Santiago Dec. ¶¶6-13. The draft and filed Reports clearly

identify the Initial Pretrial Conference scheduled for April 4 at 10.00 a.m.  *See id*. ¶13. The draft

and filed Report also clearly identify the parties would exchange Initial Disclosures by April 3.

*See id*. ¶14.  Plaintiff's counsel, Attorney Maynez, reviewed and approved the draft Report. *See

id*. ¶15.   At that time, he noted the date of the hearing the next day.  *See id*., ¶13.

Debtor-Defendant timely prepared and served her Initial Disclosures on Plaintiff's

counsel on April 3, 2017.  But, Plaintiff did not serve his Initial Disclosures on Defendant's

counsel prior to the time set for the Initial Pretrial Conference. *See id*.  Nor has he served them at

any time since.  Finally, Plaintiff's counsel did not appear at the pretrial hearing.  *See* Plaintiff's

Motion to Set Aside Order of Dismissal ("Motion"), pp. 2-5, ¶¶1-19; Declaration of Tessa Meyer

Santiago, ("Santiago Dec."), ¶¶5-8, 20, 23-28.

At the hearing, the Court found that the Plaintiff did not file a timely report, and did not

timely hold a parties planning meeting as required under the Order but held one the day before

the pretrial conference. Plaintiff's counsel also failed to appear at the initial pretrial conference

held on April 4, 2017, failed to advise the Court he would not be attending prior to the scheduled

time, and failed to excuse his absence after the hearing.  *See* ECF No. 10, pp. 2-3. Accordingly,

as noticed in the Notice of Initial Pretrial Conference and Order Fixing Date of Filing Report of

Parties Planning Meeting, the Court dismissed the Plaintiff's claims as sanctions for failure to

obey the scheduling order and failure to appear at a pretrial conference.  *See* ECF No. 10, pp. 2-

3.

On April 12, 2017, Plaintiff moved the Court to vacate the order dismissing his claims

arguing that his attorney's failure to perform the duties required by the Court constitute

excusable neglect. Debtor now opposes the Motion.

## II.     PERTINENT LAW

 A court may set aside an order, under Rule 60(b)(1), for excusable neglect.  Excusable

neglect is characterized as "the failure to timely perform a duty due to circumstances which were

beyond the reasonable control of the person whose duty it was to perform."  *In re Schultz*, at 153

(*citing Gilbert v. Suburban Athletic Club* (*In re Dayton Circuit Courts #2*), 85 B.R. 51, 54

(Bankr. S. D. Ohio 1988).  Negligence is not a basThe court considers a two-prong analysis:

first, whether the actions are neglect, and second, whether the neglect is excusable.  Debtor-

Defendant acknowledges that Plaintiff's failure to meet all the first three deadlines established by

the Court's Scheduling Order is neglect.  *See Pioneer Inv. Servs. Co. v. Brunswick Assocs*., 507

U.S. 380, 388, 113 S.Ct. 1489, 1494-95 (quoting Webster's Ninth New Collegiate Dictionary

791 (1983))(emphasis in original)(defining neglect as "'to give little attention or respect' to a

matter, [and] 'to leave undone or unattended to esp[cially] through carelessness.'").  However,

Debtor argues that the reasons given by Plaintiff for his attorney's errors and delay are specious,

self-protective, and ultimately unreasonable.

Courts are generally wary of grants of Rule 60(b)(1) relief for excusable neglect based on

claims of attorney error. *See, for example*, *Cavaliere v. Allstate Ins. Co*., 996 F.2d 1111, 1115

(11th Cir. 1993).  "Fault in the delay remains a very important factor—perhaps the most

important single factor—in determining whether neglect is excusable." *United States v. Torres*,

372 F.3d 1159, 1163 (10 Cir. 2004).   This court

> may take into account whether the mistake was a single unintentional
> incident (as opposed to a pattern of deliberate dilatoriness and delay), and
> whether the attorney attempted to correct his action promptly after
> discovering the mistake. *Hancock v. City of Okla. City*, 857 F.2d 1394,
> 1396 (10th Cir. 1988). "[A] mistake . . . could occur in any [attorney's]
> office, no matter how well run." *Id. See also D.G. Shelter Prods. Co. v.
> Forest Prods. Co*., 769 F.2d 644, 645 (10th Cir. 1985) (observing, in a
> case dismissed for failure to respond to a motion, that plaintiff's counsel
> had not committed "an inadvertent slip-up resulting from a date not being
> entered or being erroneously noted").

*Jennings v. Rivers*, 349 F.3d 850, 857 (10th Cir. 2005).

## III.    ARGUMENT

### 1.  The Failure to Meet the Deadlines Were Within Plaintiff's Counsel's Control.

Plaintiff's claim was dismissed for failing to timely hold a meeting at least 21 days before

before the initial pretrial conference, for failing to timely file a Rule 35 Report, for failing to

attend the Initial Pretrial Conference, and for failing to excuse Plaintiff's counsel's failure to

attend.   Each of these failures was within the control of Plaintiff's counsel to avoid.  Yet, he

consistently failed to take preventative or curative actions. See

a)  Plaintiff's counsel's descriptions of events do not add up.

Counsel admits he calendared the deadlines in his personal calendar. Motion ¶2. Thus, it is

fair to assume by March 2, 2017, Counsel knew his responsibility to initiate the Parties Planning

Meeting. He also knew he had to have a report on file by March 24, 2107. Counsel also knew he

had three weeks before the deadline to accomplish a one-hour task.[1] Surely, Plaintiff's counsel

could find 72 minutes in the three weeks preceding March 24 to complete his obligations.

His son's wedding took place on Friday, March 17, a full 14 days after he calendared the

deadline. Motion ¶¶ 4, 6. This event, and his participation in it, was within his reasonable

control. He states that he was sick the next week starting Monday, March 20. Motion ¶7. This

prevented him from going in to work. While getting sick was perhaps beyond his reasonable

control, he still had access to the calendar with its deadlines. The due dates were calendared in

his personal calendar, which would have been available to him at home. Motion ¶2. His rapid

response to Ms. Santiago's April 3rd email indicates that he was receiving work communications

on his cell phone, and that he could process the importance of legal communications and respond

accordingly. *See* Motion, p. 3, ¶10; Santiago Dec. ¶¶8-9.

The news of his daughter's pregnancy complication was broken to him on Friday, March 31.

While this event was beyond his reasonable control, he had the entire week of March 26 to

become aware that he had missed the March 24 deadline to file the Report and to cure his client's

defect. He did not make any effort to cure his failure to meet the missed deadline.

Good intentions are not grounds for excusable neglect. Plaintiff's counsel admits that he

"had in the back of his mind the plan to confer with opposing counsel about a resolution short of

full litigation." But, "unfortunately, time quickly passed." Motion, ¶5.   In fact, he had three

---

[1] Debtor's counsel billed 1.2 hours to her client for the emails to Mr. Maynez, the phone call
preceding the planning meeting, the planning meeting, drafting the report, seeking approval from
opposing counsel, and then filing the report.

weeks from the date he calendared the March 24 Report deadline to initiate a meeting, and

prepare a report.  Debtor believes it closer to the truth that Plaintiff's counsel intended to talk

settlement with Debtor, failed to do so, and then forgot that his obligation to meet the Court's

deadlines was still in full force and effect.  This failure to act and to remember was completely

within his reasonable control, and is, simple negligence.

      b)  <u>The Life Crises Did Not Involve Plaintiff's Counsel at the Level of a Sole Caregiver
to a Critically Ill Spouse.</u>

First, Plaintiff offers his participation in his son's wedding as grounds for finding

excusable neglect in not meeting the first two deadlines. Even if a child's wedding were the kind

of event that could support a finding of excusable neglect, Plaintiff's counsel's actions are

simply neglectful.

Plaintiff cites to certain case law as support for his arguments, but the cases are

inapposite.  First, the attorney in *In re Schultz*, 254 B.R. 149 missed one filing deadline to appeal

the order denying his client's discharge.  Attorney Maynez missed four significant deadlines—1)

holding the Rule 35 meeting in sufficient time, so that the 2) Parties Planning Meeting Report

could be timely filed, to allow the Court to strike the 3) Initial Pretrial Conference, and 4) service

of Plaintiff's Initial Disclosures.

Second, the attorney in *In re Schultz* was the "sole caregiver for his wife [who had

ovarian cancer], accompanying her to medical appointments and chemotherapy treatments. He

was responsible for administering her medication."  Conversely, during the time period in which

Plaintiff's counsel missed the deadline to hold the parties planning meeting and to file the Parties

Planning Report Deadline, he was "<u>assisting</u> with the planning, preparation and carrying out of

various responsibilities in connection with his son's wedding." Motion, ¶4 (emphasis added).

These actions do not equate with the actions of the attorney in *In re Schultz*. That attorney was

6

his wife's sole caregiver, administered her medication, took her to chemotherapy and cared for her. Attorney Maynez does not argue that he was the sole wedding planner; he states only that he was "assisting."  Unlike the attorney in *Schultz*, Attorney Maynez did not single-handedly plan and execute a wedding for his son.  Debtor assumes that Attorney Maynez has a spouse, and that his son's bride had a mother and a father, all willing and able to participate in the wedding planning.  Debtor also notes that traditionally the wedding reception is planned and hosted by the bride's family, and suspects that Attorney Maynez is overstating his involvement as a cover for his failure to meet the first two deadlines.

In fact, Counsel's descriptions of his neglectful behavior echo the behavior of counsel found by the Eighth Circuit to be pure negligence and not excusable neglect. In *Lomas and Nettleton Company v. Wisely*, 884 F.2d 965 (7th Cir. 1989), the Eighth Circuit reversed the trial court's grant of a Rule 60b(1) motion setting aside a foreclosure sale in which the trial court accepted as evidence of excusable neglect the attorney's testimony that "he had notice of the sale, planned to attend and simply became distracted and failed to realize the time."  *Id*. at 968. The Eighth Circuit found that "while we can share his sympathy for a small-town lawyer distracted by a crowded calendar, in the context of a Rule 60b(1) motion, negligence is not a ground for relief." *Id*.at 971.

In this case, while the Court may have sympathy for a father preparing for the marriage of his son, and being distracted by the wedding planning, as a practicing attorney with court-ordered deadlines, it is simple negligence to ignore admittedly calendared deadlines and fail to consistently go to the office.  *See* Motion, p. 2, where Attorney Maynez's "assisting" with the wedding preparations caused him to "miss many days" and "only [go] sporadically to the office." He also experienced "many moments of exasperation" and was caught up in "the flurry,

confusion and excitement" of a child's wedding.  *Id*. at ¶5.  This description epitomizes

carelessness, distraction and preoccupation that characterizes simple neglect, and is not a basis

for excusable neglect.

Plaintiff next argues his counsel's illness prevented him from filing a timely Report and

attending the Initial Pretrial Conference. Courts recognize that sudden, severe and serious

illnesses that require hospitalization, or prevent an attorney from communicating may form

grounds for excusable neglect.  *See JP Fyfe*, 96 B.R. at 484, requiring that attorney be unable to

file and not reasonably capable of communicating with other counsel regarding attorney's

inability to file.  But, these illnesses must be debilitating and must cover the entire time period

for which the attorney seeks to establish excusable neglect.  In *In re President Casinos Inc*., 397

B.R. 468 (BAP 8th Cir. 2008), a debtor provided as grounds for excusable neglect that her

attorney had an emergency appendectomy sometime during the time period in which to file

mediation materials as ordered by the court.  The Eighth Circuit BAP noted that "illness of

counsel may be sufficient for a finding of excusable neglect but the illness must be of 'such

character and magnitude that counsel was both physically and mentally incapacitated during the

crucial period of time.'" *In re President Casinos*, 397 B.R. at 473.  It then found that Plaintiff's

counsel's emergency appendectomy sometime during the 45-day window in which to serve

mediation materials "does not excuse the period of time in when he was not ill." *Id.* at 473-474.

Similar to the attorney in *President Casinos*, Attorney Maynez did not fall ill with what

appears to be the flu until the week of March 20, 2017, which gave him ample time to hold the

meeting before March 14, 2017, the required 21 days before the April 4 Initial Pretrial

Conference, and to draft the Rule 35 Report before March 24, 2017.  Likewise, on April 3, 2017,

he also was quite capable of communicating with Debtor's counsel, of reviewing documents, and

of e-filing his own documents on the eve of the pretrial hearing.  *See* Santiago Dec. ¶¶8-20.  He

could have anticipated he would be unable to attend the hearing and notified the Court. While he

may have been ill, his was not the caliber of illness that constitutes excusable neglect.

Plaintiff's counsel offers as further support for his personal crises defense that on March

31, 2017, he was told that his pregnant daughter was having abdominal pains and was taken to

the hospital where it was discovered that additional testing was necessary.  While this news was,

no doubt, shocking, it did not require anything of Plaintiff's counsel other than to listen to and

respond emotionally to the news.  Unlike the attorney in *Schultz*, he did not accompany her to the

hospital, take care of her other children, administer her medications, or describe any other

responsibilities that required his physical presence.  He describes only that the news was broken

to him, and that it was devastating.   This news was received at the end of the week, and does not

provide any covering excuse for the beginning of the week of March 26.  He again received news

on April 3, 2017, after he was aware of the date of the pretrial conference and the date for service

of Initial Disclosures, that there were further complications.  Again, he was not required to

physically be present to help his daughter, nor was he the sole care provider for his daughter.

Therefore, he cannot use this information as a basis for excusable neglect in missing the hearing.

c) It is Not Excusable to Ignore Calendared Deadlines of Which the Attorney Admits He is Aware, and to Fail to Notify the Court of Illness.

An attorney who calendars a deadline and then admits to ignoring should not be excused

from the consequences of his neglect.  See *Lomas and Nettleton*, 884 F.2d at 966 (attorney

testified that he knew the date and time of the sale, and had noted it on his calendar, but failed to

appear because he was distracted by clients).  Attorney Maynez knew the deadlines and the

pretrial hearing date, calendared the deadlines, and admits to ignoring the deadlines. *See*

Santiago Dec., ¶21, stating that Attorney Maynez said that he noticed the deadlines but thought

they were for another case that had settled; Motion, p. 4 ¶13, where Attorney Maynez admits that "he noted that the hearing was set for the very next day." Attorney Maynez was also aware of the severity of his illness and failed to provide a contingency plan. See *JP Fyfe, Inc. of Florida v. Bradco Supply Corp*., 96 B.R. 479, 484 (D.N.J. 1989), where the Court found excusable neglect where the attorney's illness was "not readily forseeable" and so the attorney's "failure to provide a contingency plan for it is excusable neglect." If the Court accepts Attorney Maynez's verified statement as true, Attorney Maynez knew on April 3, 2017, a day before the hearing that he was gravely ill. His illness was foreseeable. He could have called the Court to request a continuance based on his illness.   He didn't.

### 2. **Attorney Maynez Was Able to Professionally Respond When It Suited Him**

Plaintiff argues his counsel's good faith is not at issue. *See* Motion, p. 10, stating that "Counsel did [act in good faith] and no one has suggested otherwise." Debtor disagrees.

Plaintiff requests the Court excuse 33 days of inaction and four missed deadlines under the banner of good faith prosecution of Plaintiff's claim. Plaintiff argues that his counsel "did what he could to comply." Motion, p. 8, ¶8. Plaintiff argues that his counsel was "not in his right mind" on the eve of the pretrial hearing. Motion p. 8, ¶7.  To support his good faith, Plaintiff cites to several cases in which courts have found that a failure to meet a deadline because of an attorney's illness was excusable neglect.  Motion, p. 9, ¶12.

A counsel's illness can constitute excusable neglect when "the illness is so physically and mentally disabling that counsel is unable to file the [document] and is not reasonably capable of communicating to co-counsel his inability to file." *Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union* 580, 899 F. Supp.1228, 1231 (S.D.N.Y 1995) (quoting *Islamic Republic*, 739 F.2d at 465); *but see In re Brown*, 313 B.R. 693 (W.D. Mich. 2004)

(denying Appellant's Motion for Reconsidering of Judgment, which argued that his long history of mental illness prevented him from meeting the filing deadline). These are not the facts here.

Unlike the attorneys in *Active Glass Corp.*, and *JP Fyfe*, Attorney Maynez was not hospitalized, nor was he unable to communicate by phone during the <u>weeks</u> preceding March 14—the deadline by which to hold the parties planning meeting; nor during the <u>weeks</u> preceding March 24, 2017—the deadline by which to file the Rule 35 Report. He was assisting in a wedding, and only became ill the week of March 20, 2017, leaving him ample time to comply. Nor was he hospitalized and unable to speak on April 3rd, the day the parties finally met, and April 4, the day of the pretrial hearing. In fact, he admits he was able to read Ms. Santiago's email, grasp the significance of the deadline, and then call Debtor's counsel immediately after having received the email regarding the Rule 35 Report. (This also indicates that he was able to receive work emails on his phone, and that his failure to "go into the office" did not mean that he was not receiving work-related communications). He was able to conduct the attorney's planning meeting, and discuss and agree on deadlines. He was able to make requests of Debtor's counsel as to the nature of the evidence in the case, and its preservation. See Exhibit 1, p. 3, where Attorney Maynez raises "another issue" unrelated to the Rule 35 Report. He was also able to review and approve the Rule 35 Report draft sent by Ms. Santiago, and to notice, six hours later, that he had not received electronic notification that the Rule 35 Report had been filed. He was then sufficiently well enough to retrieve the draft Report, and e-file it under his own signature.

Clearly, not only was Attorney Maynez capable of communicating on the phone with Ms. Santiago, he was also capable of filing his own version of the Rule 35 Report. Ergo, Plaintiff's counsel's description of his illness and his emotional distress is belied by this actions on the critical days in question. His arguments are not made in good faith.

### 3.   Plaintiff's Conduct In this Adversary Proceeding Is Clearly a Pattern of Delay.

Additionally, Plaintiff's counsel's actions are not in good faith because they comprise "a pattern of delay" regarding the deadlines imposed by this Court.  *See In re Brown*, 313 B.R. 693, 699. Plaintiff has failed to meet every deadline and responsibility imposed by the Court thus far. *See Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.*, 156 F. Supp.2d 488 (E.D. Pa. 2001) (finding no excusable neglect when missed notice of appeals deadline was the second deadline attorney had missed in the case).  Plaintiff did not facilitate the parties planning meeting, nor did he draft and submit the planning meeting report.  Plaintiff and his counsel did not attend the Initial Pretrial Conference scheduled for April 4 at 10.00 a.m. Plaintiff's counsel never once asked for an extension of any of the due dates from Defendant's counsel. Not once during the nine days between the March 24 deadline for the Parties Planning Meeting Report and Ms. Santiago's April 3 email requesting that the parties attempt to meet the requirement, did Attorney Maynez reach out to initiate a meeting to cure his delay.  Neither did Plaintiff timely serve his Initial Disclosures on the Debtor-Defendant on April 3, 2017.  Nor has he served them at any time thereafter.  He also did not call the Court to excuse his absence, nor follow up afterwards with an excuse.  This "repeated disregard for the court's procedural rules bespeaks at a minimum of lack of diligence and at worst of bad faith."  *Home Ins. Co.*, 156 S. Supp.2d at 491 (denying defendant's motion for extension of time to file a notice of appeal).

### 4.  Debtor Will Be Severely Prejudiced if the Order is Vacated.

.      Plaintiff downplays the prejudicial impact of his request. Reversing the order has a great impact on the Debtor.  Debtor fulfilled every single one of her responsibilities in her bankruptcy case, and in this adversary proceedings.  Plaintiff did not.  He missed four significant events in the eight-week life of this adversary proceeding. *See* Santiago Dec., ¶¶23-28.  Debtor will be

severely prejudiced because a final judgment entered in her favor will become again an open

case, once again putting her discharge as to certain debts at issue. Debtor has also incurred

significant attorney's fees that if Plaintiff's counsel had acted in a timely, professional manner,

she would not have had to incur.  She would not have incurred fees for having her counsel

initiate, prepare and file the Attorneys Planning Meeting Report, and appear at the Initial Pretrial

Conference.  She would not have incurred fees in responding to this Motion.

## IV.     CONCLUSION

Given that Plaintiff's counsel missed multiple deadlines, that during the time in which he

claims to have been not in his right mind, he was capable of organizing and participating in a

wedding, of noticing and deciding to ignore calendared deadlines, of reading and immediately

responding to Debtor's counsel's emailed request regarding the planning meeting, of holding a

planning meeting, of reading a document clearly identifying the date of the Initial Pretrial

Conference the day before it was scheduled, of giving written approval to Debtor's counsel to

use his e-signature, of retrieving and filing his own Rule 35 Report after noticing that it may not

have been filed by Debtor's counsel, and that during the time period during which he failed to

hold a parties planning meeting and to prepare the report, he does not claim to be ill but was only

assisting in his son's wedding, the Court should find that Plaintiff's failure to timely file the Rule

35 Report, to attend the pretrial conference, to call chambers to excuse his absence at the pretrial

conference, and to fail to serve Initial Disclosures on Debtor was not due to excusable neglect.

Accordingly, Defendant-Debtor requests the Court deny Plaintiff's Motion to Set Aside

Order of Dismissal.

Dated:  May 1, 2017                                      /s/ Tessa Meyer Santiago
                                                        Tessa Meyer Santiago
                                                        LINCOLN LAW, LLP
                                                        Counsel for Guillermina Salazar

## Certificate of Service

I certify that on May 1, 2017, I filed a copy of the foregoing **Memorandum in Opposition**

with the United States Bankruptcy Court for the District of Utah.  A copy was served via the

Court's electronic noticing system to the following persons:


Alejandro Maynez (UT #7083)
1676 N 400 EW
Orem, UT 84097
Maynez_law@comcast.net
Attorney for Plaintiff

Dated: May 1, 2017                                            Tessa Meyer Santiago