Jeremy C. Sink (9916)
McKay, Burton & Thurman, P.C.
15 W. South Temple, Suite 1000
Salt Lake City, UT 84101
ph# 801-521-4135
fax# 801-521-4252
Email: jsink@mbt-law.com
Counsel for Defendant Guillermina Salazar

| In re: | |
|---|---|
| GUILLERMINA SALAZAR, <br><br>Debtor. | Bankruptcy No. 16-29028 KRA |
| EDUARDO VALADEZ, <br><br>Plaintiff, <br><br>v. <br><br>GUILLERMINA SALAZAR, <br><br>Defendant. | Adversary Proceeding No. 17-2005 |

**DEFENDANT'S TRIAL BRIEF**

### INTRODUCTION

This court will hear two very different sets of alleged factual scenarios in this case. The Plaintiff will allege that $16,300 was loaned to the Defendant and her family members. The Defendant will deny this allegation. In fact, the Defendant will deny ever receiving any funds from Eduardo Valadez. However, the Defendant will admit that $1,800 was loaned to her family members from Eduardo Valadez, a $1,000 loan to her husband in January of 2015 and an $800

1

loan to her daughter Dulce Rocha in January of 2015.  The Defendant will testify that significant funds were paid back to Mr. Valadez for these two loans, far in excess of the $1,800 loaned in January of 2015.

The Defendant will also admit that she and her family received a $3,000 loan in October of 2013.  However, this loan was not made by Mr. Valadez but by an individual believed to be his nephew, named Cesar.  The Defendant will explain to this court that in exchange for this $3,000 loan in October of 2013 (by Mr. Valadez' nephew), she was asked to provide collateral.  She complied with this request and gave Cesar the title to her mobile home, which she had paid $28,000 for in 2009.  After paying Cesar $300 a month for 12 months, Cesar informed the Defendant that he had allegedly transferred the loan to Mr. Valadez and that Mr. Valadez also was given the title to her mobile home.  The Defendant never agreed to this, but nonetheless continued to make monthly payments to Mr. Valadez on the loan originally made by Cesar.  In sum, the testimony from the Defendant, her husband and her daughter will show that the family received $4,800 ($3,000 from Cesar and the $1,800 from Mr. Valadez) and repaid Cesar and Mr. Valadez at least $17,820.  However, the Defendant and her family members will testify that the $17,820 of payments were all made in cash (as well as the above-mentioned loans being made to them in cash).

Meanwhile, the Plaintiff will assert (as set forth in his Complaint) that no payments were made on these loans.  This position will be clearly refuted by the Defendant with the following evidence.  First, the Defendant and her family members will testify to making the $17,820 of cash payments referenced above.  Second, the Defendant will show to the court text messages (a translation of which is accepted into evidence as Plaintiff's Exhibit 3, which mention on numerous occasions that the Defendant and her family made the requested monthly payments

related to the above referenced loans. Of note, not once in those text messages does Mr. Valadez ever deny receiving monthly payments from the Defendant or her family members. Third, those same text messages request receipts from Mr. Valadez, which he promises, yet never delivers, and again does not deny that they should be provided. Fourth, and most damning for the Plaintiff will be evidence from small claims case number 178100263 filed in the Utah County Justice Court, Provo Division ("Small Claims Case"). The Small Claims Case was filed by Mr. Valadez (with the same counsel representing him in this case) against Dulce Rocha. As a reminder, Dulce Rocha is the daughter of the Defendant and the recipient of an $800 loan from Mr. Valadez. The docket will show that default judgment was entered against Ms. Rocha and that garnishments were issued to collect on this judgment. Ms. Rocha's pay advices show significant funds paid on this judgment.

In sum, the evidence will point to one thing – the Plaintiff has been paid every penny and more for the loans referenced above. The Defendant and her family have much more to say about this situation but plead with the court to pay attention to the evidence which the Plaintiff is not able to produce. Namely, there will be no evidence other than testimony from Mr. Valadez of money actually being loaned to the Defendant; there will be no evidence to support the Plaintiff's position that payments were not made (in fact the only hard evidence this court will see – other than oral testimony) will be that the Plaintiff garnished Dulce Rocha's paychecks. Additionally, the Plaintiff will be unable to explain away the lack of any outrage as to the Defendant's text messages asserting months worth of payments. In sum, the only finding this court will be able to make is that there is no debt and if there was a debt, it has been satisfied or should be discharged because that debt was not obtained through fraud or false pretenses and there was no willful or malicious damage to property that belonged to the Plaintiff.

3

# ISSUES

**A.  Nondischargeability under 523(a)(2)(A)**

1. Does the Defendant owe the plaintiff a debt?

2. If the Defendant owes the plaintiff a debt, what is the amount of that debt?

3. If the Defendant owes the plaintiff a debt, what amount, if any, did the Defendant repay to the Plaintiff?

4. Did the Defendant make a representation to the Plaintiff about the value of her trailer?

5. If there was a representation made to the plaintiff by the Defendant as to the value of the trailer, was the representation as to the value of the trailer erroneous at the time of the representation?

6. If the representation as to the value of the trailer was made and was erroneous at the time it was made, did Ms. Salazar know the representation was erroneous?

7. If the representation as to the value of the trailer was made, did the Defendant reasonably rely on that representation?

8. If the Defendant owed the Plaintiff a debt, was that debt incurred through false pretenses, a false representation or fraud related to the Defendant's representation as to the value of the trailer?

9. Did the Defendant have cancer at the time of the alleged loans?

**B.  Nondischargeability under 523(a)(6)-Willfull conversion**

1. Does the Defendant owe the plaintiff a debt?

2. If the Defendant owes the plaintiff a debt, what is the amount of that debt?

3. If the Defendant owes the plaintiff a debt, what amount, if any, did the Defendant repay to the Plaintiff?

4. If there was a debt owed to the Plaintiff by the Defendant, was that debt secured?

5. Was there a security agreement between the parties?

6. Was the security agreement properly perfected?

7. If there was a properly secured security interest in favor of the Plaintiff, did the Defendant willfully and maliciously convert that interest out of the Plaintiff's possession/name and into her own.

8. If the security interest was not properly perfected, could that security be considered property that belonged to the Plaintiff?

9. If the security interest was properly perfected, could that security be considered property that belonged to the Plaintiff?

10. Were the Defendant's actions in getting a replacement title for the mobile home done upon advice of counsel?

**C.** **Nondischargeability under 523(a)(6) – Willful and Malicious Abuse of Process**

1. Does the Defendant owe the plaintiff a debt in any way related to willful and malicious abuse of process?

2. If the Defendant owes the plaintiff a debt, what is the amount of that debt?

3. If the Defendant owes the plaintiff a debt, what amount, if any, did the Defendant repay to the Plaintiff?

4. Did the Defendant willfully and maliciously abuse process?

5. Even if the Defendant willfully and maliciously abused process, did that alleged abuse create a debt owed to the Plaintiff that is nondischargeable under 534(a)(6)?

5

## FACTUAL BACKGROUND

The Plaintiffs refer the Court to the Final Pre-Trial Order in this adversary proceeding entered September 5, 2018 and the stated uncontroverted facts outlined therein. Of note, the parties disagree on virtually every fact in this case.

## PLAINTIFF'S SUMMARY OF FACTS

a. The Defendant, Guillermina Salazar, never received a loan from the Defendant.

b. Ms. Salazar is aware of three loans made by the Defendant or by his nephew, Cesar Valadez to her family members. A $3,000 loan made by Cesar to her husband in October of 2013, a $1,000 loan to her husband Armando Garcia made in January of 2015 and an $800 loan to her daughter Dulce Rocha in January of 2015.

c. The Defendant and her family made 12 payments of $300 per month to Cesar related to the original $3000 loan (from November 2013 to October 2014).

d. Upon receipt of the $3,000 loan from Cesar, the Defendant gave Cesar the title to her mobile home trailer.

e. The Defendant paid $28,000 for the trailer when acquired in 2009.

f. In October of 2014, Cesar informed the Defendant that the balance of the loan owed to him along with the collateral had been transferred to his uncle, Eduardo Valadez.

g. Beginning in November of 2014, the Defendant was told by Eduardo Valadez to pay $1,200 per month on the balance of the loan.

h. The Defendant and her husband paid $1,200 in November, $1,200 in December and $1,200 in January of 2015.

i. In January of 2015, Mr. Valadez made two separate loans. A $1,000 loan to the Defendant's husband and an $800 loan to the Defendant's daughter.

j. Beginning in February 2015 the Defendant and her family paid Mr. Valadez $1,300 towards the new $1,000 loan and the pre-existing $3,000 loan.

k. The $1,300 payments continued monthly through August of 2015.

l. In the meantime, from February 2015 through July 2015 the Defendant were also paying $120 per month toward the $800 loan made to Dulce Rocha.

m. In April of 2015 Defendant paid $800 under the belief that would pay off the loan made to Dulce Rocha. However, after the $800 was paid the Plaintiff informed the Defendant that only covered interest and fees.

n. In September of 2015, the Defendant and her family had endured enough.

o. The Defendant requested a payoff via text message from the Plaintiff. A payoff was never received.

p. The Defendant complained about how much had been paid and requested receipts for the payments. No receipts were ever provided.

q. At or about this time, seeing that Mr. Valadez continued to demand more and more money and without providing any of the requested receipts or payoff, the Defendant and her husband went to see an attorney, Dustin Hardy.

r. Mr. Hardy advised the Defendant to get a replacement title, since the loan had been more than paid and since Mr. Valadez would not give the title back.

s. In November of 2017, Mr. Valadez filed a smalls claims action against Dulce Rocha.

t. Mr. Valadez collected significant sums from Ms. Rocha through this garnishment but has failed to disclose those collections to this court.

    u. Mr. Valadez continued to request payments and came to the Defendant's home demanding more payment.

    v. Upon one such visit, the Plaintiff intimidated the Defendant and her family by flashing a gun.

    w. Fearing for her safety and her family's safety, the Defendant filed a police report.

    x. The Defendant never made any representation to plaintiff about the value of her trailer home.

    y. The Defendant asserts that the principal and significant interest was repaid to the Plaintiff on the $4,800 loaned to her family members.

## ARGUMENT

**I. Section 523 (a)(2)(A)**

Bankruptcy Code Section 523(a)(2)(A) excepts from discharge those debts incurred by the debtor to the extent the debt was incurred through "false pretenses, a false representation, or actual *fraud*, . . ." 11 U.S.C. 523(a)(2)(A)(emphasis added). The fraud referred to in Section 523(a)(2) is common law fraud. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437 (1995). First and foremost in this case, the Defendant asserts that the loans were made to her family members, not to her. Thus, there is no debt to be non dischargeable. However, assuming for the sake of argument that there was a debt, in Utah, a party attempting to demonstrate a debt incurred through fraud must show the following: "(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6)

8

that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage." *Armed Forces Ins. Exchange v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35.

Common law fraud is also known in the State of Utah as intentional fraud and in addition to the above elements generally "requires a showing of intent to deceive, that is, the misrepresenter's intent to induce the victim's reliance on the false representation." Id. This element of intent "may be inferred where a misrepresentation is voluntarily communicated to the victim with knowledge that it is false, or without knowing whether it is true or false but knowing that the victim is likely to rely on it." *Galloway v. Afco Dev. Corp*., 777 P.2d 506, 509 (Utah Ct.App. 1989). "It is sometimes said that a 'reckless' misrepresentation, made 'knowing that the [the misrepresenter] had insufficient knowledge upon which to base such a representation' is tantamount to the intent to deceive." Id. at 509(citing *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273 (Utah 1952).

### A.  Defendant did not commit fraud.

The facts introduced at the trial of this matter will show that the Defendant did not receive any loans from the Plaintiff. Further, the facts will show that Defendant did not make any representations as to the value of the trailer and did not make any misrepresentations to the Defendant about her cancer. Defendant admits that her family members received loans totaling $4,800 from the Plaintiff or his cousin but asserts that those amounts were paid off, plus significant interest. The facts will show "(1) that no representation was made as to the value of the trailer or misrepresentation as to her having cancer, (2) thus no representation about a presently existing material fact that was false. The evidence will further show that (3) no false representation was made by Guillermina Salazar and (4) that even if she didn't have cancer

(which the documents will show otherwise) she believed she had cancer and therefore any representations as to the same were not made knowing they were false. Additionally, the evidence will show that even if a representation as to the value of the mobile home was made, the plaintiff will not be able to show that he reasonably relied upon the representation. The plaintiff's own amended complaint indicates he was living in a mobile home at the time of the alleged misrepresentation and would have had as much, if not more knowledge as to the value of the mobile home at the time of the alleged representation than the Defendant. In sum, the loans were not made based on any alleged fraudulent representation or alleged fraudulent misrepresentation.

**II. 523(a)(6)**

11 U.S.C. 523(a)(6) excludes from a debtor's discharge debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Section 523(a)(6) excepts from discharge only those debts or injuries arising from Salazar's willful and malicious conduct. 11 U.S.C. 523 (a)(6). As set forth above, the first hurdle the Plaintiff must clear is to show that he loaned the Defendant money. The testimony will show that he loaned her family members money and that she later agreed to assist in paying off those loans. Thus, at the time the loans were made, as Mrs. Salazar was not involved there could have been no malicious or willful injury created because the loans were made to third parties.

The burden is on the Plaintiff to show that the Defendant obtained a replacement title for the mobile home with willful and malicious intent to injure the Plaintiff. See Collier on Bankruptcy ¶ 523.12. *See also United States Credit Bureau, Inc. v. Digoras*, 337 P.2d 866, 870 (Cal. App. 1969).

    A. **Defendant did not willfully and maliciously injure the Plaintiff**.

"[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998).  The Defendant admits getting a replacement title under the knowledge that the Plaintiff had an alleged lien on that trailer.  However, prior to obtaining that replacement title the Defendant sought legal counsel on what to do.  The Defendant believed and still believes and asserts that all monies owed to the Plaintiff have been paid.  Notwithstanding this position, the Plaintiff refused to release the lien on the mobile home trailer.  Only after consulting with legal counsel did the Defendant get the idea to obtain a replacement title and go forward with those actions.  At worst this act was simply a self-help remedy against an unreasonable creditor.  Moreover, if the lien on the mobile home trailer were perfected through filing the title with the DMV, the lien would still be in place.  By not recording the lien with the DMV, the Plaintiff failed to perfect the same and therefore the property was not his.  Thus, there could have been no willful and malicious injury to his property.

### III.  The Burden of Proof

"[T]he standard of proof generally applied in civil actions is by a preponderance of the evidence standard. See *Johns v. Shulsen*, 717 P.2d 1336, 1338 (Utah 1986)*;* See also *Lipman v. Industrial Comm'n.*, 592 P.2d 616, 618 (Utah 1979)(noting preponderance is "usual standard of proof ... used in most civil actions*")*; *Morris v. Farmers Home Mut. Ins. Co*., 28 Utah 2d 206, 500 P.2d 505, 507 (1972)(stating preponderance is "universally recognized standard of proof required to establish facts in a civil case"); see also *Harken v. Board of Oil, Gas & Mining*, 920 P.2d 1176, 1182 (Utah 1996)(stating "proper standard of proof in the administrative context is generally the 'preponderance of the evidence' standard");  Additionally, bankruptcy courts have rejected argument asserting that Section 523 of the Bankruptcy Code requires a higher burden of

proof. See *Grogan v. Garner*, 498 U.S. 279, 286 (U.S. 1991)(stating "We also do not believe that, in the context of provisions designed to exempt certain claims from discharge, a debtor has an interest in discharge sufficient to require a heightened standard of proof.").

IV. **The Hazards of Dealing in Cash**.

"When a debtor is unsophisticated or lacks experience in financial recordkeeping, courts have set a lower threshold for justification" when that debtor primarily uses cash. *In re Grammenos*, 469 B.R. 535, 549 (Bk.D.MJ 2012)(citing *Meridian Bank*, 958 F.2d at 1231 ("[o]bviously an unsophisticated wage earner dealing primarily in **cash** should not be denied a discharge because he failed to keep books of account. A higher standard of care is required, however, for a merchant actively engaged in credit transactions.")). In this case, the Debtor and her family members are unsophisticated. As an example, the Debtor's husband agreed to a $3000 loan with $400/mo. interest over a one year term (a 160% interest rate). The Debtor and her family then repaid this amount, plus additional funds, but failed to track those payments as they were made in cash – again an indication of an unsophisticated debtor. IN the meantime, the Plaintiff also chose to conduct his business in cash. But as set forth in the Grammenos case, the courts apply a higher standard of care to keep records for businesses than individuals. The plaintiff can not hide behind his lack of records and simply rely on this court to believe his testimony over the Debtor's testimony. The Plaintiff must provide records showing how much money was loaned.

The Lender's lone piece of evidence to allegedly support the lending of $14,000 (no other evidence exists for the other loans) is an alleged certificate of title which the Debtor asserts was

12

provided to his nephew for a loan made by him, not a loan made by the Plaintiff. More importantly, this title was never submitted to the State of Utah to record the security interest in anything other than the Debtor's own handwriting. Again, applying the higher standard of care to the business owner, this failure to perfect the alleged security interest is not the Debtor's fault, it is Mr. Valadez' fault. He is the one to be held to the higher standard. When he chooses to conduct business in cash without supporting documentation, he is the one who suffers the consequences of that decision. Additionally, the title does not indicate a lien on the property, it indicates a sale of the property. A sale which never took place.

## CONCLUSION

This is an unfortunate case. Neither party kept records. The factual stories are vastly different. Police have been called. Lives have been wrecked. And in the end, there is a substantial lack of concrete evidence to support Plaintiff's case. For the purposes of nondischargeability, it is the Plaintiff which carries the burden of proof to prove up the alleged violations of 11 U.S.C. 523(a)(2)(A) and 523(a)(6). Disputed testimony does not meet the preponderance of evidence standard. Cash transactions, unsupported by any supporting evidence does not meet the standard. Inconsistent positions taken by the Plaintiff does not meet that standard. This case should be dismissed with prejudice, with no nondischargeable judgment entered against the Debtor as the Plaintiff has failed to meet his burden under either 523(a)(2)(A) or 523(a)(6).

DATED this 2nd day of November, 2018.

McKAY, BURTON & THURMAN

By: /S/Jeremy C. Sink

                        Jeremy C. Sink

                        Attorneys for Debtor/Defendant

**CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)**

I hereby certify that on November 2, 108, I electronically filed the foregoing with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system:

- **Stephen K. Christiansen**  steve@skclawfirm.com, jen@skclawfirm.com
- **Alejandro Maynez**  maynez_law@comcast.net, heath@casedriver.com
- **Jeremy C. Sink**  jsink@mbt-law.com

**All other parties registered with CM/ECF and entitled to notice in this case:**

**None**

/S/ Jeremy C. Sink