Alejandro Maynez (7083)
1676 North 400 East
Orem, Utah 84097
Telephone:  801.764.9585
Facsimile:  801.607.6982
maynez_law@comcast.net

Stephen K. Christiansen (6512)
311 South State Street, Ste. 250
Salt Lake City, Utah 84111
Telephone:  801.716.7016
Facsimile: 801.716.7017
steve@skclawfirm.com

*Attorney for Plaintiff*

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | | |
|---|---|---|
| In re:<br><br>GUILLERMINA SALAZAR,<br><br>           Debtor. | ) ) ) ) ) ) | Bankruptcy No. 16-29028-KRA<br><br>Chapter 7 |
| EDUARDO VALADEZ,<br><br>           Plaintiff,<br><br>vs.<br><br>GUILLERMINA SALAZAR,<br><br>           Defendant. | ) ) ) ) ) ) ) ) ) ) ) | Adversary Proceeding No. 17-02005 |

### [PLAINTIFF'S PROPOSED]

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I.   FINDINGS OF FACT

### *Parties*

1.     Defendant Guillermina Salazar ("Guillermina") is an individual residing in Utah County, State of Utah. She is the Debtor in the above-captioned bankruptcy case.

2.     Plaintiff Eduardo Valadez ("Eduardo") is an individual residing in Utah County, State of Utah.

### *The Transactions*

3.     On or about October 20-21, 2014, Guillermina induced Eduardo to lend her $14,000 by various representations, including giving and pledging an original Utah Certificate of Title for a 1974 Stax trailer, VIN/HIN #S10164U, Title #UT9149649 (the "Trailer"), which she represented was worth $35,000 and which she said he could keep if she did not return the funds with a little extra within three to four months' time. Guillermina signed and dated the title as "Seller," and Eduardo signed the title as "Buyer."

4.     Eduardo subsequently advanced sums totaling $1,000 to Guillermina's husband Armando Garcia ("Armando") on or about October 25 and December 15, 2014, $700 of which Guillermina induced through representations, including again pledging the Trailer, representing it was worth far more than any amount owed to Eduardo, signing a written guarantee for the funds she and her husband obtained, and giving and pledging an original Utah Certificate of Title for a 1992 Toyota Camry LE, VIN/HIN #4T1SK12E3NU070685, Title #UT13022389 (the "Camry"), which she said he could keep if Armando did not repay the funds as agreed: $300 within three months of October 25, 2014, and $700 within five months of December 15, 2014, plus interest in an unstated amount. Guillermina signed and dated the Camry title as "Seller," and Eduardo signed the title as "Buyer."

5.      Eduardo also advanced sums totaling $1,300 to Guillermina's adult daughter Dulce Rocha ("Dulce") on or about November 22, 2014, and January 22, 2015, $800 of which Guillermina induced by representations, including pledging the Trailer, representing it was worth far more than any amount owed to Eduardo, and giving an oral guarantee. Eduardo added the amount of Dulce's obligation to Guillermina's signed written guarantee.

### *Subsequent Events*

6.      Neither Guillermina nor Armando nor Dulce ever repaid Eduardo any amount toward these obligations, despite demand and recovery attempts. Eduardo subsequently obtained judgments against Armando and Dulce for their defaults.

7.      During Eduardo's efforts to recover, Guillermina made false statements via text message in an attempt to build a false "record" and in an attempt to incite Eduardo. Among other things, Guillermina represented that she had repaid Eduardo some amounts when she had not paid him any amount. In an effort to deter, discourage, and harass him, she also filed a police report with the Provo City Police Department on or about September 3, 2015 (Provo Police Report Incident #15PR22934) in which she falsely alleged under oath, among other things, that Eduardo told her he could get a gun and made other threats to intimidate and threaten her.

8.      On or about October 1, 2015, Guillermina obtained a civil stalking injunction against Eduardo from the Provo Fourth District Court, Case #150401538, in an attempt to intimidate Eduardo and prevent him from addressing the parties' agreements. At the civil stalking injunction hearing, Guillermina falsely swore under oath that Eduardo had engaged in threatening bodily injury against her. Guillermina further falsely claimed under oath that she had been making payments to Eduardo for over a year. Following a hearing on the civil stalking

injunction, the court dismissed the injunction. In doing so, the court, *sua sponte*, reviewed a past civil stalking injunction Guillermina had filed and noted that it too had been dismissed.

9.       Eduardo incurred attorney fees and costs of at least $1,750.00 in defending himself against Guillermina's civil stalking injunction claim. Furthermore, Eduardo suffered inconvenience, anxiety, emotional distress, mental anguish, humiliation, and embarrassment as a result of the civil stalking injunction proceedings that Guillermina wrongfully instituted and prosecuted. He was required to take time to defend himself against baseless charges; to retain and pay an attorney; to review and respond to false allegations against him; and to prepare for and attend court. These events caused him to feel stress, to be embarrassed in public, to experience mental and emotional pain, and to devote time and energy to address Guillermina's conduct that he could otherwise have devoted to productive and pleasurable pursuits.

10.       On or about November 20, 2015, Guillermina informed Eduardo on the phone that she would not be paying him back any of the money he had provided to her, to Armando, or to Dulce. The next day, on or about November 21, 2015, Eduardo presented to the Utah Department of Motor Vehicles ("DMV") the original fully executed title to the Trailer. When he did, the DMV informed Eduardo that Guillermina had appeared at the DMV the previous week; had represented to the DMV that the original title to the Trailer had been lost or stolen; had consequently applied for and obtained a duplicate title; and had then transferred ownership of the Trailer to a third party. Guillermina applied to the DMV for the duplicate title surreptitiously and without informing Eduardo. She knew at the time she applied for the duplicate title that she had no right to title to the property because she had already given it to Eduardo. Guillermina did so with the specific intent to harm Eduardo by taking property belonging to him and to thereby

deprive him of that interest. Guillermina specifically knew of this transaction when she spoke

with Eduardo on or about November 20, 2015, but did not advise him of this fact.

11.     Guillermina also disposed of the Camry to which she had given Eduardo title

without informing him. She did not list this car on her assets at the time she filed her bankruptcy

schedules on October 12, 2016.

12.     Guillermina's representation that the Trailer was worth $35,000.00 and/or was

worth far more than the $16,300.00 Eduardo provided to Guillermina and her family members

was a materially false representation. On her bankruptcy schedules filed barely two years after

this representation was made, on October 12, 2016, Guillermina represented the value of the

Trailer to be $5,000.00. No material event other than the passage of time, with ordinary wear and

tear to the Trailer, occurred between the time of the original representation and the time of the

sworn bankruptcy schedule. Other evidence shows the Trailer had no material value.

13.     The evidence also shows that Guillermina used the Trailer in a number of

transactions with other parties in which she intentionally engaged in similar conduct or otherwise

used the Trailer to obtain funds and/or shield herself from repayment requirements at the expense

of others.

## II.     CONCLUSIONS OF LAW

### *Jurisdiction and Venue*

1.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157(a) and 1334(b) and DUCivR 83-7.1.

2.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) in that it

seeks a determination of the dischargeability of particular debts pursuant to 11 U.S.C. §§

523(a)(2) and (a)(6).

3.      Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409.

4.      This adversary proceeding arises in and under and relates to the bankruptcy case styled *In re Guillermina Salazar*, a chapter 7 case in the United States Bankruptcy Court for the District of Utah, Northern [sic] Division, docketed as case number 2:16-bk-29028 KRA. Eduardo has consented to the entry of final orders and a judgment by this Court.

### *Plaintiff's nondischargeability claims*

5.      Eduardo has alleged nondischargeability claims in three causes of action under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). The claims are alleged jointly and/or alternatively.

6.      To prevail on a nondischargeability action, the creditor must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-91 (1991); *Nelson v. Tsamasfyros (In re Tsamasfyros)*, 940 F.2d 605, 607 (10th Cir. 1991); *In re Chivers*, 275 B.R. 606, 613 (Bankr. D. Utah 2002). Discharge provisions will be strictly construed against the creditor and liberally construed in favor of the debtor. *See Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

7.      The Court concludes that Eduardo has met his burden under each of his three claims.

### *First Claim for Relief*

8.      Eduardo's first cause of action seeks recovery and nondischargeability under 11 U.S.C. § 523(a)(2)(A) based on Guillermina's alleged false pretenses, false representation, and/or fraud. That section provides in relevant part:

> A discharge under . . . this title does not discharge an individual debtor from any debt . . .
>
> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

> false pretenses, a false representation, or actual fraud, other than a statement respecting
> the debtor's or an insider's financial condition . . . .

11 U.S.C. § 523(a)(2)(A). The elements require a showing of a fraudulent misrepresentation,

inducement, harm caused, and justifiable reliance in connection with the provision of money,

property, or services, or the extension, renewal, or refinancing of credit. *Field v. Mans*, 516 U.S.

59, 70 (1995); *In re Chivers*, 275 B.R. 606, 618-23 (Bankr. D. Utah 2002); *In re Appling*, 500

B.R. 246, 254-55 (Bankr. M.D. Ga. 2013). Each of these elements is met here.

9.      First, Guillermina made false and fraudulent misrepresentations to Eduardo in

connection with the transactions of October 20-21 and December 15, 2014. Among other things,

Guillermina misrepresented to Eduardo that the Trailer was worth $35,000.00; that the Trailer

was worth far in excess of the amount of money Eduardo provided to Guillermina and her family

members; and that Guillermina was and intended to give and pledge the Trailer and Camry to

secure repayment of her obligations or else she was allowing Eduardo to keep them. Guillermina

made these misrepresentations with scienter, knowing or recklessly disregarding that these

statements were false.

10.      Second, Guillermina's false and fraudulent misrepresentations were made for the

purpose and with the intent of inducing action by Eduardo in the form of advancing funds to her

and to her family members and/or to extend, renew, or refinance credit to her family members

rather than take immediate action against them for the recovery of funds provided.

11.      Third, Guillermina's false and fraudulent misrepresentations caused Eduardo

harm. In particular, Eduardo lost $35,000.00 in value promised to him by Guillermina in

originally giving him the title to the Trailer and, alternatively, lost $16,300.00 provided to

Guillermina and her family members, plus interest. Eduardo is also entitled to punitive damages

of up to nine times these alternative amounts based on Guillermina's intentional, reckless, malicious, and fraudulent conduct.

12.     Fourth, Eduardo justifiably relied on Guillermina's misrepresentations in providing money to her and her family. *See Chivers*, 275 B.R. at 622 (noting standard is less demanding than "reasonable" reliance and a party may justifiably rely even when he could have ascertained falsity by conducting an investigation) (discussing and relying on *Field v. Mans*, 516 U.S. 59 (1995), and Restatement (Second) of Torts §§ 540, 541 cmt. a (1976)). But for Guillermina's misrepresentations, Eduardo would not have provided any money to Guillermina in the first place, and would not have provided additional money or extended, renewed, or refinanced credit to members of Guillermina's family.

13.     The Court concludes that the amount Eduardo seeks to recover here from Guillermina, in both compensatory and punitive damages, is nondischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(2)(A) because the debt is based upon money, property, services, or an extension, renewal, or refinancing of credit obtained by false pretenses, a false representation, or actual fraud.

### ***Second Claim for Relief***

14.     Eduardo's second cause of action seeks recovery and nondischargeability under 11 U.S.C. § 523(a)(6) based on Guillermina's alleged willful and malicious conversion.

15.     "To prove conversion, a party must establish 'an act of willful interference with property, done without lawful justification, by which the person entitled to property is deprived of its use and possession,' and that the party 'is entitled to immediate possession of the property at the time of the alleged conversion.'" *Jones & Trevor Mktg., Inc. v. Lowry*, 2010 UT App 113, ¶ 15 n.13, 233 P.3d 538, *aff'd*, 2012 UT 39, 284 P.3d 630 (quoting *Bennett v. Huish,* 2007 UT

App 19, ¶ 31, 155 P.3d 917 (emphasis, citations, and internal quotation marks omitted)). Each of these elements is met here.

16.     Debts arising from claims of unlawful interference with property rights are nondischargeable under Section 523(a)(6) if they are based on willful and malicious conduct by the defendant and otherwise meet the requirements of *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), that the injury be intentionally caused. *See, e.g.*, *In re Diel*, 277 B.R. 778, 783 (Bankr. D. Kan. 2002) (citing 4 Collier's on Bankruptcy § 523.12[1] (15th ed. Rev. 2001); *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 453 (Bankr. N.D. Ind. 2001); *In re Little*, 335 B.R. 376, 387 (Bankr. N.D. Ohio 2005); *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001). Each of these elements is met here.

17.     By virtue of the parties' agreements, Eduardo obtained an interest in the Trailer no later than October 21, 2014, and the Trailer became Eduardo's sole property no later than February 21, 2015. By virtue of the parties' agreements, Eduardo also obtained an interest in the Camry no later than December 15, 2014, and the Camry became Eduardo's sole property no later than May 15, 2015.

14.     Guillermina willfully interfered with Eduardo's property interest in the Trailer by appearing at the DMV, telling the DMV the original title to the Trailer had been lost or stolen, applying for and obtaining a duplicate title, and then transferring ownership of the Trailer to a third party. Guillermina further willfully interfered with Eduardo's property interest in the Trailer by engaging in a number of transactions with other parties in which she intentionally engaged in similar conduct or otherwise used the Trailer to obtain funds and/or shield herself from repayment requirements at the expense of others. Guillermina also willfully interfered with

Eduardo's property interest in the Camry by disposing of the car after transferring title to

Eduardo.

18.    Guillermina's willful interference with Eduardo's property interests was done

without lawful justification. Guillermina had previously pledged or transferred title to the Trailer

and the Camry to Eduardo and had no legal right to ownership or possession of Eduardo's

interests in these vehicles at the time she exercised dominion and control over them.

Furthermore, Guillermina made false and fraudulent misrepresentations to the DMV to effectuate

the transfer, namely, falsely representing that the title had been lost or stolen when in fact

Guillermina was fully aware that she had delivered the fully executed title to the Trailer to

Eduardo. Guillermina further falsely and materially omitted to advise Eduardo of the transaction

she had undertaken with the DMV when she advised him on November 20, 2015, that she would

not be returning any of his money, and she never told Eduardo that she had disposed of the

Camry.

19.    Guillermina's tortious misconduct in willfully interfering with Eduardo's property

rights in the Trailer and Camry deprived Eduardo of their use and possession. Because

Guillermina had wrongfully exercised dominion and control over these vehicles, title to the

Trailer was transferred to a third party and ownership and possession of both vehicles were lost

to Eduardo.

20.    Eduardo was entitled to immediate possession of the Trailer at the time

Guillermina obtained a duplicate title and transferred it to a third party. Eduardo obtained an

interest in the Trailer no later than October 21, 2014, and became the sole owner of the Trailer no

later than February 21, 2015, with all attendant rights to possession. Guillermina had no

continuing right or interest in the Trailer as of these dates to the extent the same was transferred

to Eduardo. Eduardo was also entitled to immediate possession of the Camry at the time Guillermina disposed of it. Eduardo obtained an interest in the Camry no later than December 15, 2014, and became the sole owner of the Camry no later than May 15, 2015, with all attendant rights to possession. Guillermina had no continuing right or interest in the Camry as of these dates to the extent the same was transferred to Eduardo.

21.    Guillermina's tortious misconduct caused harm to Eduardo and/or to his property. Specifically, Eduardo lost the value of the Trailer, which Guillermina represented at the time of the transfer to be $35,000.00, or alternatively the value of the funds he advanced in reliance thereon. Eduardo also lost the value of the Camry. Eduardo is also entitled to punitive damages of up to nine times these amounts based on Guillermina's intentional, reckless, malicious, and fraudulent conduct.

22.    Guillermina was aware that her tortious misconduct would cause harm to Eduardo and/or to his property, and she intended to cause that harm. Specifically, Guillermina knew that by wrongfully exercising dominion and control over the Trailer and the Camry, Eduardo would not be able to take possession of or otherwise enjoy the use of these vehicles and would not have the vehicles available to recoup the monies he provided to Guillermina and her family, thereby causing substantially certain financial harm to Eduardo. Furthermore, the proceeds from Guillermina's transactions with third parties with respect to the vehicles were not used to pay Eduardo, further evidencing Guillermina's awareness of and intent to cause harm to Eduardo.

23.    The Court concludes that the amount Eduardo seeks to recover here from Guillermina, in both compensatory and punitive damages, is nondischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(6) because the debt is based upon the willful and malicious injury by Guillermina to Eduardo and/or to his property.

### *Third Claim for Relief*

24.     Eduardo's third cause of action seeks recovery and nondischargeability under 11 U.S.C. § 523(a)(6) based on Guillermina's willful and malicious abuse of process.

25.     An abuse of process claim under Utah state law requires "both 'an ulterior purpose' and '"a wilful act in the use of the process not proper in the regular conduct of the proceeding."' *Hatch v. Davis*, 2006 UT 44, ¶ 36, 147 P.3d 383 (quoting William Prosser, *Law of Torts* § 121, at 857 (4th ed. 1971)) (additional citation and quotation omitted). Each of these elements is met here.

26.     Debts arising from claims of tortious abuse of process are nondischargeable under Section 523(a)(6) if they are based on willful and malicious conduct by the defendant and otherwise meet the requirements of *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), that the injury be intentionally caused. *See, e.g.*, *In re Abbo*, 168 F.3d 930, 932 (6th Cir. 1999) (holding abuse of process judgment nondischargeable). Each of these elements is met here.

27.     Guillermina instituted civil stalking injunction proceedings against Eduardo for an ulterior purpose, namely, to deter him from recovering monies she promised to pay him on behalf of herself and her family members and/or property to which he was entitled by virtue of the parties' prior agreements.

28.     Guillermina committed acts in the use of the civil injunction stalking process that were not proper in the regular prosecution of the proceedings, including but not necessarily limited to falsely representing that Eduardo had threatened her with a gun and falsely representing that she had been making payments to Eduardo over the course of a year.

29.     Guillermina's tortious misconduct caused harm to Eduardo. In particular, Eduardo incurred attorney fees and costs of at least $1,750.00 in defending himself against the civil

stalking injunction proceedings that Guillermina wrongfully instituted and prosecuted.

Furthermore, Eduardo suffered inconvenience, anxiety, emotional distress, mental anguish,

humiliation, and embarrassment as a result of the civil stalking injunction proceedings that

Guillermina wrongfully instituted and prosecuted in an amount the Court values at no less than

$10,000. Eduardo is also entitled to punitive damages of up to nine times these amounts based on

Guillermina's intentional, reckless, malicious, and fraudulent conduct.

30.     Guillermina was aware that her tortious misconduct would cause harm to

Eduardo, and she intended to cause that harm. Specifically, Guillermina knew that by wrongfully

instituting and prosecuting civil stalking injunction proceedings against Eduardo, and by making

false statements therein, he would be required to incur attorney fees and costs and would not be

in a position to recover money or property from Guillermina as she had represented he would,

thereby causing substantially certain financial harm to Eduardo. Furthermore, Guillermina knew

that wrongfully instituting and prosecuting the civil stalking injunction proceedings against

Eduardo would cause him to suffer inconvenience, anxiety, emotional distress, mental anguish,

humiliation, and embarrassment. Among other things, she knew he would be required to defend

himself against her baseless charges, to retain and pay an attorney, to review and respond to her

false allegations against him, and to prepare for and attend court, with all the attendant physical,

mental, and emotional strain that would go along with these events.

31.     The amount Eduardo seeks to recover here from Guillermina, in both

compensatory and punitive damages, is nondischargeable pursuant to the provisions of 11 U.S.C.

§ 523(a)(6) because the debt is based upon the willful and malicious injury by Guillermina to

Eduardo and/or to his property.

*Prejudgment Interest*

32.     Prejudgment interest may be included in a nondischargeable debt judgment. *See,*

*e.g.*, *Cohen v. de la Cruz,* 523 U.S. 213, 218-19 (1998); *Kim v. Sun (In re Sun)*, 535 B.R. 358,

370-72 (10th Cir. B.A.P. 2015); *MacArthur Co. v. Cupit (In re Cupit)*, 514 B.R. 42, 57 (Bankr.

D. Colo. 2014), *aff'd*, 541 B.R. 739 (D. Colo. 2015).

33.     Under federal law, "prejudgment interest may generally be awarded if (1) the

award of prejudgment interest would serve to compensate the injured party, and (2) the award

of prejudgment interest is otherwise equitable." *Sun*, 535 B.R. at 370 (citation and quotations

omitted).

34.      "Section 523 [of the Bankruptcy Code] contains no standard or

applicable interest rate for the allowance of prejudgment interest." *Id.* at 372. When there is no

applicable federal law regarding prejudgment interest, the Court is free to choose any interest

rate that will fairly compensate the plaintiff for the delay in the receipt of payment, including

looking to state law as a matter of convenience and practicality. *See id.* (citing and discussing

Tenth Circuit case law). This is also appropriate where, as here (and as in most bankruptcy

adversary proceedings), both federal and state law are implicated. *See id.*

35.     Utah law provides: "Unless parties to a lawful contract specify a different rate of

interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in

action shall be 10% per annum." Utah Code Ann. § 15-1-1 (2018). Inasmuch as the parties here

had unpaid underlying contracts for the loan or forbearance of money, goods, or choses in action,

but did not specify a rate of interest, the 10% rate specified by the Utah statute will be used here

for the nondischargeability judgment because the wrongful conduct relates in large part to

actions related to those contracts. *Cf. Sun*, 535 B.R. at 372 (awarding 8% prejudgment interest

under Colorado state statute). The Court concludes the use of that interest rate under the circumstances of this case would serve to compensate Eduardo as the injured party and is otherwise equitable.

### *Nondischargeable Compensatory and Punitive Damages*

36.     Based on the foregoing, Eduardo has proven entitlement to compensatory damages of $35,000 on his first and second causes of action and $11,750 on his third cause of action, as well as nondischargeability of the same.

37.     Based on the foregoing, Eduardo has also proven entitlement to punitive damages, as well as nondischargeability of the same, based on Guillermina's intentional, reckless, malicious, and fraudulent conduct, as allowed by law. *See Cohen v. De La Cruz*, 523 U.S. 213 (1998); *In re Jordana*, 232 B.R. 469, 478-79 (B.A.P. 10th Cir. 1999), *aff'd*, 216 F.3d 1087 (10th Cir. 2000). Punitive damages are awarded of nine times Eduardo's actual damages. This is within the Supreme Court's due process standard of single-digit multiples for punitive damages purposes. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425-26 (2003). It is a fair and appropriate assessment given the egregious nature of Guillermina's repeated misrepresentations to Eduardo and the resulting harm.

38.     As the prevailing party, Eduardo is entitled to recover his taxable costs under Fed. R. Bankr. P. 54(b)(1) and is instructed to submit a Bill of Costs reflecting the same for taxing by the Clerk of Court.

### III.     ORDER FOR RELIEF

WHEREFORE, the Court hereby ORDERS, ADJUDGES, and DECREES that judgment shall enter in favor of plaintiff Eduardo Valadez and against defendant Guillermina Salazar as follows:

1.      Upon his First Claim for Relief, for a nondischargeable judgment in favor of Plaintiff and against Defendant in the amount of $350,000, which includes both compensatory and punitive damages, pursuant to 11 U.S.C. § 523(a)(2)(A), plus prejudgment interest.

2.      Upon his Second Claim for Relief, for a nondischargeable judgment in favor of Plaintiff and against Defendant in the amount of $350,000, which includes both compensatory and punitive damages, pursuant to 11 U.S.C. § 523(a)(6), plus prejudgment interest.

3.      Upon his Third Claim for Relief, for a nondischargeable judgment in favor of Plaintiff and against Defendant in the amount of $117,500, which includes both compensatory and punitive damages, pursuant to 11 U.S.C. § 523(a)(6), plus prejudgment interest.

4.      Plaintiff's counsel is directed to submit a separate form of Judgment pursuant to Fed. R. Civ. P. 58(a) and Fed. R. Bankr. P. 7058 consistent with these findings and conclusions.

DATED this 2nd day of November, 2018.

By: _____/s/ Stephen K. Christiansen_____
        Stephen K. Christiansen
        Alejandro Maynez
        *Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**
**BY NOTICE OF ELECTRONIC FILING (CM/ECF)**

I hereby certify that on this 2nd day of November, 2018, I electronically filed the within

and foregoing document with the United States Bankruptcy Court for the District of Utah by

using the CM/ECF system. I further certify that the parties of record in this case are registered

CM/ECF users and will be served through the CM/ECF system.


_____/s/ Stephen K. Christiansen_____